

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

April 6, 2021

**BY ECF AND EMAIL**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

  Re: <u>United States</u> v. <u>Abigail Baez,</u> 19 Cr. 271 (CS)

Dear Judge Seibel:

  The Government respectfully submits this letter in advance of sentencing of defendant Abigail Baez, currently scheduled for April 13, 2021 at 11:30 a.m., and in response to defendant's sentencing memorandum dated March 30, 2021 ("Baez Letter").

  Abigail Baez barely avoided facing serious criminal charges when she was arrested on March 21, 2019. Daniel Pichardo, her boyfriend and father of her daughter, was charged that day with a crime carrying a lengthy mandatory minimum prison sentence, and was bailed to their home in Queens on house arrest. But this close contact with the law did nothing to deter Baez. Instead of carefully complying with the law, and taking steps to convince Pichardo to follow his bail conditions, Baez arranged large-scale narcotics transactions, including selling dozens of grams of heroin to a confidential informant. When arrested on October 2, 2019 in the house she shared with Pichardo and her daughter, the DEA found more than a kilogram of heroin and thousands of dollars in cash. As a result of her large-scale narcotics trafficking, Baez faces a sentencing range of 108 to 135 months' imprisonment. A sentence within that range is richly deserved, based on the seriousness of the offense, the need to promote respect for the law, and to afford adequate specific and general deterrence.

**A. Instant Offense Conduct**

  On March 21, 2019, Abigail Baez drove her boyfriend Daniel Pichardo to complete a drug transaction with Jeffrey Compres in Yonkers. (Presentence Investigation Report ("PSR") ¶¶ 14, 15). After Baez parked the car in the vicinity of where the drug deal was to take place, law enforcement agents sprung out, to arrest Pichardo's co-conspirators. (PSR ¶ 15). Baez started to drive her car at a high rate of speed and erratically, running red lights and over the double yellow lines. Law enforcement ultimately stopped the car and arrested Baez, Pichardo, and the other occupant of the car; during a search of the car, the DEA found what later lab tested as more than 400 grams of heroin. (PSR ¶ 16). The Government ultimately decided not to charge Baez;

Hon. Cathy Seibel  Page 2
April 6, 2021

Pichardo was charged, however, with narcotics conspiracy, and ultimately was bailed, to the home he shared with Baez in Queens.

Baez and Pichardo continued to deal narcotics. She and Pichardo arranged sales of dozens of grams of heroin to a confidential informant at their home in August and September 2019. (PSR ¶ 20). She also made drug deliveries on behalf of Pichardo while he was on home detention. (PSR ¶ 20). Baez was not merely acting on Pichardo's behalf. She was integrally involved in the sales to the informant, including verifying the price of the heroin and ensuring that the informant had paid the proper amounts of money. And she did all this in the house she and Pichardo shared with their young daughter.

On September 25, 2019, a grand jury returned a Superseding Indictment against Baez, charging her with narcotics conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), for distributing more than 1 kilogram of heroin. DEA agents went to arrest her and Pichardo on October 2, 2019. In the Queens house, agents found more than a kilogram of heroin and thousands of dollars in cash. (PSR ¶ 20). Baez has been detained ever since; Magistrate Judge Smith denied her bail application that day; the Court denied her bail appeal on November 25, 2019; and denied her application for release due to the COVID-19 pandemic on April 8, 2020.

**B. Procedural History**

Pursuant to a plea agreement, Baez pleaded guilty to a lesser-included count of the Superseding Indictment, narcotics conspiracy under 841(b)(1)(B), for conspiring to distribute 100 grams and more of heroin. Under the plea agreement, the parties stipulated that Baez's Sentencing Guidelines were 108 to 135 months'.

Jeffrey Compres, who agreed with Pichardo to deal the drugs which Pichardo and Baez brought in their car, is the only other defendant yet sentenced in this case. This Court sentenced him to 97 months' imprisonment on September 8, 2020.

**C. Presentence Investigation Report**

The Probation Office has calculated the offense level as follows, and as consistent with the plea agreement: (1) pursuant to U.S.S.G. § 2D1.1(a)(5) & (c)(4) and Application Note 8(D), because the offense involved more than 3 kilograms but less than 10 kilograms of heroin, the base offense level is 32; (2) pursuant to U.S.S.G. § 2D1.1(b)(12), two levels are added because Baez maintained a premises for distributing a controlled substance; and (3) three levels are removed for acceptance of responsibility. In total, the specific offense level is 31. (PSR ¶¶ 27–37). The parties agree that Baez has no criminal history.

This offense level and criminal history category lead to a Guidelines range of 108 to 135 months' imprisonment. (PSR ¶ 75.) The Government agrees with the Probation Office's calculation.

The Probation Office has recommended that the Court sentence the defendant to 60 months' imprisonment. (PSR p. 16.)

**D. The Court Should Sentence Baez to a Sentence within the Guidelines Range**

Abigail Baez may never have been charged with a crime before October 2, 2019, but by that date, she knew well the consequences of dealing narcotics, not merely because most people know those consequences, but because she had been arrested and nearly charged a few months earlier for such a crime, and Daniel Pichardo, her partner, co-habitant, and father of her child, had been arrested and charged with a narcotics offense carrying a long statutory mandatory minimum. She was present in court when Pichardo was presented on a complaint, and she lived with him at their residence while he was on bail and home detention. Nonetheless, she chose to deal huge quantities of heroin, including from the house she shared with Pichardo and their young daughter, and stored more than a kilogram there. That was a serious offense and showed great disrespect to the law. The consequences she knew could be meted out against Pichardo did nothing to deter her from her conduct. Only a sentence within the Guidelines range, of 108 to 135 months', is appropriate under Section 3553(a).

That Guidelines range is driven by two factors: the huge weight of the narcotics that she and Pichardo were trafficking; and her maintenance of her house as a premises for the purpose of distributing narcotics. Both factors militate strongly in favor of a substantial sentence. The weight demonstrates that Baez was not merely dabbling in drug distribution: the kilogram found in her house had a street value of approximately $60,000, and could supply dozens of drug users with dangerous heroin for a long period. And Baez's use of her home as a drug den is particularly egregious here, since she shared that home with her daughter.

Baez makes numerous arguments for leniency, but the facts do not support the lenient sentence, the mandatory minimum of 60 months', which she requests. Her personal history and characteristics, Baez Letter 6–7, demonstrate an overall happy childhood: "her household [was] family-oriented," PSR ¶ 48, and she remains close with her siblings and her parents. While her life undoubtedly changed when she became involved with Pichardo at a young age, she chose to return to a relationship with him in 2017, she chose to continue to allow Pichardo to live at her family's home, and she chose to commit criminal conduct with him as part of the instant offense, which she knew risked her freedom and raising her daughter.

The facts of her crime also belie her assertion that she will be specifically deterred regardless of this Court's sentence. Baez Letter 7–8. When she dealt narcotics in 2019, she knew precisely what the consequences of such a crime could bring, given that her partner, co-conspirator, co-parent, co-habitant was facing the same. But she chose to disregard those consequences. A mandatory minimum sentence could provide no assurance that she would not reoffend when released. Only a more substantial sentence, within the Sentencing Guidelines, could do so.

Finally, Baez requests a more lenient sentence based upon the particularly difficult conditions of confinement during the COVID-19 pandemic. Baez Letter 4–5. The Government respectfully disagrees with this analysis. While the Government absolutely agrees that Baez's pre-sentencing conditions are more difficult than those of a defendant before the pandemic, this argument would militate in favor of more lenient sentences for any defendant detained or incarcerated since the onset of COVID-19. Courts throughout this district have generally rejected

Hon. Cathy Seibel  Page 4
April 6, 2021

such reasoning (albeit usually in the context of motions for compassionate release).  *United States v. Bryant*, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (conditions of confinement during COVID "are not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction."); *United States v. Denault*, No. 11 CRIM. 121-7 (GBD), 2020 WL 2836780, at *2 (S.D.N.Y. June 1, 2020) (rejecting argument for compassionate release grounded in conditions of confinement given the "seriousness of the offense and need for adequate deterrence."); *United States v. Brooks*, No. 11-CR-206-LTS, 2020 WL 6946589, at *2 (S.D.N.Y. Nov. 24, 2020) (same).

    Respectfully submitted,

    AUDREY STRAUSS
    United States Attorney

    By: /s Samuel L. Raymond
        Samuel L. Raymond
        Assistant United States Attorney
        (212) 637-6519

cc:  Howard Tanner, Esq.