

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

August 30, 2021

**BY ECF and EMAIL**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    <u>United States</u> v. <u>Daniel Pichardo</u>, 19 Cr. 271 (CS)

Dear Judge Seibel:

      The Government respectfully submits this letter in advance of sentencing of defendant Daniel Pichardo, currently scheduled for September 2, 2021 at 10:00 a.m., and in response to defendant's sentencing memoranda dated August 25, 2021 ("Pichardo Memorandum") and August 30, 2021 ("Pichardo Supplemental Memorandum").

      Daniel Pichardo dealt huge quantities of heroin and other dangerous narcotics throughout 2019. His federal arrest on serious drug felony charges in March 2019 did nothing to stop him. Instead, he continued to deal large quantities of drugs, while on bail and house arrest, brazenly arranging drug deals from the home he shared with his girlfriend and co-conspirator Abigail Baez, and their young daughter. When arrested on October 2, 2019 in that house, the DEA found more than a kilogram of heroin and thousands of dollars in cash. A total sentence within the applicable Guidelines Range of 151 to 188 months' is richly deserved, based on the seriousness of the offense, the need to promote respect for the law, and to afford adequate specific and general deterrence.

**A. Instant Offense Conduct**

      In March 2019, Daniel Pichardo arranged to sell large quantities of fentanyl to Jeffrey Compres in Yonkers, so that Compres could sell the drugs to an interested buyer. (Presentence Investigation Report ("PSR") ¶ 16). Pichardo arrived in a car to sell the drugs to Compres; the car was driven by his girlfriend Abigail Baez and with another passenger, Harrison Lora. PSR ¶ 17. After Baez parked the car in the vicinity of where the drug deal was to take place, law enforcement agents sprung out, to arrest Pichardo's co-conspirators. (PSR ¶ 17). Baez drove the car away; law enforcement ultimately stopped the car and arrested Pichardo, Baez, and Lora; during a search of the car, the DEA found what later lab tested as more than 400 grams of heroin. (PSR ¶¶ 17–18). Pichardo, Compres, Compres' helper, Luis Alberto Gonzalez, and Harrison Lora were each arrested and charged with narcotics conspiracy; Baez was not arrested. Over the Government's objection, Pichardo was bailed, on home detention, to the house he shared with Baez in Queens.

Hon. Cathy Seibel                                                        Page 2
August 30, 2021

In April 2019, the Grand Jury returned an indictment, charging him, Compres, and Gonzalez with narcotics conspiracy, namely as to Pichardo, conspiring to distribute 100 grams of heroin.

Pichardo and Baez continued to deal narcotics while he was on bail. He arranged sales of dozens of grams of heroin to a confidential informant at the home he shared with Baez and their daughter in August and September 2019. (PSR ¶¶ 19–20). He also instructed Baez to deliver drugs to customers on his behalf. Pichardo was intercepted on one occasion speaking with Baez while the two discussed Baez's receipt of "3 kilos." (PSR ¶ 20). During the summer of 2019, Pichardo was also intercepted on a wiretap discussing his senior role in the violent street gang known as the Trinitarios. (PSR ¶ 25); *see also* (PSR ¶¶ 60–61) (Pichardo discussing his role in the Trinitarios).

On September 25, 2019, a grand jury returned a Superseding Indictment against Pichardo, charging him with narcotics conspiracy in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), conspiring to distribute more than 400 grams of fentanyl and more than 1 kilogram of heroin, and Title 18, United States Code, Section 3147, committing a felony offense while on bail. DEA agents went to arrest him and Baez on October 2, 2019. In the Queens house, agents found more than a kilogram of heroin and thousands of dollars in cash. (PSR ¶ 20). Pichardo has been detained ever since.

**B. Procedural History**

Pursuant to a plea agreement, Pichardo pleaded guilty to a lesser-included count of the Superseding Indictment, narcotics conspiracy under 21 U.S.C. § 841(b)(1)(B), for conspiring to distribute 40 grams and more of fentanyl and 100 grams and more of heroin, partially while on release in violation of 18 U.S.C. § 3147. Under the plea agreement, the parties stipulated that Pichardo's Sentencing Guidelines were 151 to 188 months', and that Pichardo was eligible for and had successfully qualified for safety valve relief under 18 U.S.C. § 3553(f).

This Court sentenced Jeffrey Compres to 97 months' imprisonment on September 8, 2020. This Court sentenced Abigail Baez to 60 months' imprisonment on April 13, 2021. The Honorable Ronnie Abrams, United States District Judge, and the Honorable Sarah Netburn, United States Magistrate Judge, sentenced Luis Alberto Gonzalez to time served, after his successful completion of the Young Adult Opportunity Program and plea to a misdemeanor, on July 7, 2021.

**C. The Plea Agreement and the Applicable Guidelines Range**

The plea agreement calculated the Stipulated Guidelines Range as 151 to 188 months'. The plea agreement calculated the offense level as 32, as follows: (1) pursuant to U.S.S.G. § 2D1.1(a)(5) & (c)(4) and Application Note 8(D), because the offense involved more than 3 kilograms but less than 10 kilograms of heroin and approximately 500 grams of fentanyl, the base offense level is 32; (2) pursuant to U.S.S.G. § 2D1.1(b)(12), two levels are added because Pichardo maintained a premises for distributing a controlled substance; (3) pursuant to U.S.S.G. § 3C1.3, three levels are added because Pichardo committed part of the offense while on bail; (4) pursuant to U.S.S.G. § 2D1.1(b)(18), a two-level reduction applies based on the safety valve; and (5) three levels are removed for acceptance of responsibility.

The plea agreement calculated Pichardo's Criminal History Category as III, with 4 criminal history points, as follows:

1. On or about September 9, 2003, Pichardo pleaded guilty in Kings County Supreme Court to Assault in the Second Degree, in violation of NYPL § 120.05, and on November 6, 2003, was sentenced to 6 months' imprisonment. After he was released from prison, he was resentenced on December 15, 2004, based on a violation of probation to 1 year imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in no criminal history points.

2. On or about May 16, 2006, Pichardo pleaded guilty in Kings County Supreme Court to Assault in the Third Degree, in violation of NYPL § 120.00, and on June 13, 2006, was sentenced to 1 year imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in no criminal history points.

3. On or about March 20, 2007, Pichardo pleaded guilty in Kings County Criminal Court to Criminal Possession of Marihuana in the Fifth Degree, in violation of NYPL § 221.10, and on that day was sentenced to time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in no criminal history points.

4. On or about March 2, 2009, Pichardo pleaded guilty in Kings County Criminal Court to Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of NYPL § 220.03, for an offense which occurred on October 20, 2007. On May 13, 2009, he was sentenced to 1 year imprisonment. Pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(e), this sentence results in two criminal history points.

5. On or about March 2, 2009, Pichardo pleaded guilty in Kings County Criminal Court to Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of NYPL § 220.03, for an offense which occurred on January 31, 2008. On May 13, 2009, he was sentenced to 1 year imprisonment. Pursuant to U.S.S.G. §§ 4A1.1(b), 4A1.2(a)(2), and 4A1.2(e), this sentence (which is a separate sentence from that described in paragraph 4 above, and the sentences were separated by an intervening arrest) results in two criminal history points.

Probation calculates the offense level similarly, but does not credit Pichardo with the two points removed for the safety valve, based on its disagreement with the plea agreement's interpretation of whether Pichardo is safety valve eligible.[1] (PSR ¶¶ 32–41). Probation determines

---

[1] Because Probation determined that Pichardo was ineligible for the safety valve because of his criminal history, it did not opine on whether Pichardo is eligible for a two-point reduction under U.S.S.G. § 5C1.2. The Government understands from other cases that Probation generally takes the position that while defendants who have more than 1 criminal history point are eligible for statutory relief from the mandatory minimum under 18 U.S.C. § 3553(f), they are not eligible for the two-point reduction under the Sentencing Guidelines, because the Guideline has still not yet been updated after passage of the First Step Act. Instead, Probation generally recommends the Court grant a two-level downward variance to such defendants, because the Sentencing Commission (which issued the current Guidelines in November 2018) will almost certainly change

Hon. Cathy Seibel                                                              Page 4
August 30, 2021

that Pichardo is not safety valve eligible because it concludes that Pichardo was sentenced to 18 months for the 2003 Assault conviction, which is more than 13 months and which he served within 15 years of his commission of the instant offense, so that this sentence results in three criminal history points, leading to a total of 7 criminal history points and a Criminal History Category of IV. (PSR ¶¶ 43–50).[2]

The Government considered this position at length, and stands by its plea agreement, that Pichardo has 4 criminal history points. Upon initial review of Pichardo's criminal history, the Government conveyed to defense counsel criminal history calculations in line with the PSR. In response, defense counsel stated that Pichardo in fact received six months for the violation of probation, meaning the total sentence imposed for the 2003 Assault conviction was 12 months, not 18. The Government investigated Pichardo's 2003 sentencing at length.

The Government obtained from the clerk's office for the Brooklyn Supreme Court the underlying Certificate of Disposition on the 2003 Assault conviction, which the Government encloses herein as Exhibit A. The Certificate of Disposition states that on November 6, 2003, Pichardo was sentenced to "6 MONTH(S)" and five years probation. The Certificate then states on December 15, 2004, Pichardo was resentenced on a violation of probation to "1 YEAR(S)." The Government continued to investigate whether the re-sentencing was for an *additional* year on top of the initial 6 months' sentence, or an *aggregate* of 1 year. The Government obtained from the New York City Department of Correction[3] documents regarding Pichardo's incarceration, which the Government encloses herein as Exhibit B, which show that Pichardo served a total of approximately 245 days of imprisonment in 2003 and 2004, 122 of which were after his December 2004 violation of probation. The Government concluded that Pichardo's actual service of approximately 8 months imprisonment, approximately 4 months of which appear to be in relation to the violation of probation, strongly corroborated defense counsel's position that the 2004 re-sentencing was to an *aggregate total* of 1 year. *See, e.g.*, N.Y. Correct. Law § 803, s. 1(b) ("A person serving an indeterminate sentence of imprisonment may receive time allowance against the maximum term of his or her sentence not to exceed one-third of the maximum term imposed by the court."); *see also Foster v. Smith*, 52 A.D.2d 1088, 1089 (1976) (describing similar statutory scheme well before Pichardo's sentencing). In light of these facts, the Government determined that it could not establish that Pichardo was sentenced to more than 13 months for the 2003 Assault

---

the Guidelines to incorporate the broadened definition in the First Step Act (which was enacted in December 2018). To the extent the Court holds that Pichardo is, in fact, is eligible and has qualified for the safety valve, the Government agrees with Probation's generally stated position, and believes it appropriate for the Court to grant a two-level variance.

[2]  Probation also included an additional conviction on Pichardo's criminal history, which the Government did not include in the plea agreement: a February 2004 sentence of 30 days for assault in the third degree (PSR ¶ 44). This conviction does not affect Pichardo's criminal history, given its age.

[3]  The Government first requested these records from the New York *State* Department of Corrections and Community Supervision. DOCCS had no records on Pichardo. The Government believes this further buttresses the conclusion that Pichardo was sentenced to an aggregate of 1-year imprisonment, because the Government understands that he would have otherwise been incarcerated in a DOCCS facility.

Hon. Cathy Seibel                                                                                   Page 5
August 30, 2021

conviction by a preponderance of the evidence, and thus the sentence should not count for criminal history purposes. *United States v. Marte*, No. 08 CR. 1131 (DC), 2013 WL 12328696, at *5 (S.D.N.Y. July 22, 2013) (applying the holding that "[w]hen finding facts relevant to sentencing for Guidelines calculation purposes, the district court [is] required to use the preponderance of the evidence standard" from *United States v. Awan*, 607 F.3d 306, 312 (2d Cir. 2010) to determining a defendant's criminal history); *see United States v. Williams*, 247 F.3d 353, 358 n. 7 (2d Cir. 2002) (noting that "[t]he government bears the burden of proving, by a preponderance of the evidence, facts relevant to sentencing"). Similarly, the Government determined that these facts were sufficient evidence to demonstrate that Pichardo would meet his burden to establish his eligibility for safety valve relief. *See United States v. Gonzalez Cueto*, 803 F. App'x 552, 554 (2d Cir. 2020) ("The burden is on the defendant to prove entitlement to safety-valve relief by a preponderance of the evidence.").

Probation's contrary argument, respectfully, is incorrect. In the PSR, Probation states that the "the term of imprisonment from the original term of imprisonment and the term of imprisonment imposed upon revocation is utilized to compute the criminal history category." (PSR ¶ 86). That is a correct statement of law. However, and as described above, the Government believes that Pichardo was *not* sentenced to 1 additional year upon re-sentencing, but rather to 6 additional months. Because his "adult term of imprisonment" totaled less "than one year and one month," the sentence lies outside the applicable time period. U.S.S.G. § 4A1.2(k)(2). The Government also agrees with Probation that "criminal history points are based on the sentence pronounced, not the length of time actually served." (PSR ¶ 86). But the parties do not rely on the fact that Pichardo served 8 months' imprisonment for the 2003 Assault conviction for the conclusion that the sentence does not count for purposes of criminal history; instead, they rely on his actual service of time as *evidence* of what the pronounced sentence was.

The Probation Office has recommended that the Court sentence the defendant to 108 months' imprisonment on the narcotics conspiracy, and 12 months' for committing an offense while on release, for a total of 120 months'. (PSR p. 16.)

**D. Discussion**

**1. Applicable Law**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

Hon. Cathy Seibel                                                                                    Page 6
August 30, 2021

    **2.  The Court Should Sentence Pichardo to a Total Sentence Between 151 and 188
Months**

        In his teens and 20s and over the course of just a few years, Daniel Pichardo committed
three assaults and was also convicted of two narcotics misdemeanors stemming from narcotics
sales.  As described in the PSR, the assaults were quite serious and each led the victims to need
hospitalization: in August 2002, Pichardo and another person assaulted a victim, which resulted
in the victim being stabbed; less than a month later, Pichardo and another person punched,
kicked and struck a victim; in July 2005, Pichardo used a baseball bat to repeatedly hit a victim.
A few years later, in October 2007 and then January 2008, Pichardo sold drugs, to an undercover
and as observed by law enforcement.  Pichardo received lenient imposed sentences, never more
than 1 year, and a total of approximately two years in prison.

        As of March 2019, perhaps an observer would have considered these crimes the actions
of a young man, and from a surface view, Pichardo appeared to have outgrown criminal
behavior.  He had not been convicted in over a decade, and had been raising his daughter with
his girlfriend, Abigail Baez.  But those appearances were misleading.  Pichardo arranged to sell
large quantities of deadly opioids to Jeffrey Compres for re-distribution.  The Court knows well
the consequences of unchecked opioids on the streets of New York.  But what distinguishes
Pichardo, negatively, from many of the other narcotics traffickers who appear before this Court
is his conduct after his March 2019 arrest.  He was granted bail, over the Government's
objection, but did not take the opportunity to comply with the law and Pretrial services, and then
face his sentence for that crime.  Instead, after his arrest and arraignment on a charge carrying a
long statutory mandatory minimum, he brazenly violated the law and this Court's trust, choosing
to deal huge quantities of heroin, including from the house he shared with his young daughter.

        These are tremendously serious offenses, evidencing great disrespect for the law, and
meriting substantial punishment.  A lengthy sentence is also necessary for the Court to send a
message to individuals of the consequences of narcotics trafficking, especially while out on bail,
and to deter Pichardo specifically, whose short stints in prison despite his repeated serious
criminal activity did nothing to stop him in the instant case.  Finally, the Court should consider
Pichardo's high-ranking status in the Trinitarios in fashioning the appropriate sentence.[4]  Only a
total sentence, on the drug conspiracy and commission of a felony while on bail, within the
Guidelines range of 151 to 188 months' is appropriate under Section 3553(a).[5]

---

[4]  While Pichardo was at one point a high-ranking Trinitario, the Government nonetheless
concluded, after Pichardo provided "all information and evidence" regarding his 2019 narcotics
trafficking, that Pichardo qualified for safety valve relief because he "did not use violence or
credible threats of violence or possess a firearm . . . in connection with the offense," namely the
2019 narcotics conspiracy, and he "was not an organizer, leader, manager, or supervisor of others"
in that same offense.  18 U.S.C. § 3553(f).

[5]  A sentence of imprisonment under 18 U.S.C. § 3147 must run consecutively to any other
sentence of imprisonment. Accordingly, the Court, "in order to comply with the statute, should
divide the sentence on the judgment form between the sentence attributable to the underlying
offense and the sentence attributable to the enhancement. The Court will have to ensure that the
"'total punishment' . . . is in accord with the guideline range for the offense committed while on

### 3.  Pichardo's Submission

Pichardo makes numerous arguments for leniency, suggesting that the Court sentence him to less than the 60 months' imposed on Baez, "that either involves a minimal amount of incarceration or does not involve any incarceration."  Pichardo Memorandum at 4.  But his arguments do little to merit such a sentence, or disturb the conclusion that the Court should impose a substantial sentence, within the Guidelines range of 151 to 188 months'.



Third, Pichardo suggests that a shorter sentence would "allow the court to evaluate his ability to rehabilitate himself."  Pichardo Memorandum at 4.  But the Court can make a rough guess at his rehabilitation, based on his arrest and bail in March 2019.  He took no steps to return to a law-abiding life, instead shockingly dealing drugs while out on bail.  Pichardo's hopes that he will become a successful barber, who can "support[] his family, pay[] his taxes, and giv[e] back to the community," Pichardo Memorandum at 4, are admirable, but the Court cannot trust his say-so, given his background and the instant conduct.

---

release, including, as in any other case in which a Chapter Three adjustment applies . . . , the adjustment provided by the enhancement in this section."  *See* U.S.S.G. § 3C1.3, Application Note 1 (providing examples).

Hon. Cathy Seibel                                                                    Page 8
August 30, 2021

     Finally, Pichardo requests a more lenient sentence based upon the "significantly harsh conditions while incarcerated mainly due to the COVID-19 pandemic."  Pichardo Memorandum at 3.  The Government respectfully disagrees with this analysis.  While the Government absolutely agrees that Pichardo's pre-sentencing conditions are more difficult than those of a defendant before the pandemic, this argument would militate in favor of more lenient sentences for any defendant detained or incarcerated since the onset of COVID-19.   Courts throughout this district have generally rejected such reasoning (albeit usually in the context of motions for compassionate release).  *United States v. Bryant*, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (conditions of confinement during COVID "are not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction."); *United States v. Denault*, No. 11 CRIM. 121-7 (GBD), 2020 WL 2836780, at *2 (S.D.N.Y. June 1, 2020) (rejecting argument for compassionate release grounded in conditions of confinement given the "seriousness of the offense and need for adequate deterrence."); *United States v. Brooks*, No. 11-CR-206-LTS, 2020 WL 6946589, at *2 (S.D.N.Y. Nov. 24, 2020) (same).

     The Government respectfully requests that the Court impose a sentence within the applicable Sentencing Guidelines, between 151 and 188 months' imprisonment.

               Respectfully submitted,

               AUDREY STRAUSS
               United States Attorney

          By: /s Samuel L. Raymond
              Samuel L. Raymond
              Assistant United States Attorney
              (212) 637-6519

cc:  Samuel Karliner, Esq.